UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JANE DOE, on her own behalf and on behalf of a class of those similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. |
| THE INDIVIDUAL MEMBERS OF THE INDIANA STATE BOARD OF LAW EXAMINERS, in their official capacities, | ) ) ) ) ) | 1:09-cv- 0842 WTL-TAB |
| Defendants. | ) | CLASS ACTION |

**Class Action Complaint for Declaratory and Injunctive Relief**

### I.    Introduction

1.    Jane Doe is a member of the Illinois bar who does not meet the established requirements for admission on a foreign license pursuant to Indiana law but meets all the educational qualifications for taking the Indiana bar examination. However, the application asks a number of intrusive questions concerning whether the applicant has ever been diagnosed with certain specific mental health disorders, whether the applicant has since the age of sixteen (16) been diagnosed with any mental, emotional or nervous disorders, whether the applicant has any mental, emotional, or nervous disorder or condition that, if untreated, could affect her ability to practice law, and whether treatment is being received.  If an applicant answers affirmatively to any of the questions she must disclose detailed information about her treatment, sign blanket releases for all mental health treatment and must submit to further evaluation and assessment as ordered by the Judges and Lawyers Assistance Program ("JLAP"), a program of the Indiana Supreme

Court. Jane Doe has been diagnosed with an emotional disorder that in no way affects her ability to practice law. She is a person with a disability as that term is defined in the Americans with Disabilities Act, 42 U.S.C. § 12102(2), and, on her own behalf and on behalf of those similarly situated, objects to the unnecessary inquiries into her mental health history, the consideration of any information stemming from these unnecessary inquiries, and the placement of additional burdens on individuals with disabilities during the course of the process of admission to the Indiana bar. The actions of defendants violate the Americans with Disabilities Act.

**Jurisdiction, venue, cause of action**

2. This Court has jurisdiction of this cause pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

4. Declaratory relief is authorized by 28 U.S.C. §§ 2201, 2202 and by Rule 57 of the Federal Rules of Civil Procedure.

5. This action is brought, pursuant to 42 U.S.C. § 1983, to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States and pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.*

**Parties**

6. Jane Doe, a pseudonym, is a permanent resident of Porter County, Indiana.

7. The Individual Members of the Indiana State Board of Law Examiners ("Members"), sued in their official capacities, are the ten duly appointed members of the Indiana bar who comprise the Indiana State Board of Law Examiners. As public officials they are designated by their official title rather than by their names pursuant to F.R.Civ.P. 17(d).

**Class action allegations**

8.   Jane Doe brings this action on her own behalf and on behalf of a class of those similarly situated pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.

9.   The class is defined as:

> all persons who will file an application to take the Indiana bar examination for which any of the following are true:
>
>> -they have been diagnosed with or treated for bi-polar disorder, schizophrenia, paranoia, or any other psychotic disorder
>>
>> -they have been diagnosed, since the age of 16 until the present, with or treated for any mental, emotional or nervous disorder.
>>
>> -they have a mental, emotional or nervous condition or impairment which if untreated could affect their ability to practice law in a competent and professional manner

10.   The requirements of Rule 23(a) of the Federal Rules of Civil Procedure are met here. Specifically:

> a.   The class is so numerous that joinder of all members is impracticable. The exact size of the class is currently unknown, however, it is believed to be significant. In 2008, 745 persons took the Indiana bar examinations given in February and July. In 2007, the number was 816. In 2006 the number was 795. The National Alliance on Mental Illness estimates that one in four adults experience a mental health disorder in a given year. http://www.nami.org/Template.cfm?Section=About_Mental_Illness&Template=/ContentManagement/ContentDisplay.cfm&ContentID=53155. And, a law review article reports that a four year study of law students at the University of Maryland found that 15% of the students sought counseling and nearly all were diagnosed as suffering from a mental illness. Jon Bauer, *The Character of the Questions and the Fitness of the Process: Mental Health, Bar Admissions and the Americans with Disabilities Act*, 49 UCLA L. REV. 93, 105, n. 36 (2001) (citing Faith Dickerson, *Psychological Counseling for Law Students: One Law School's Experience*, 37 J. LEGAL EDUC. 82, 83-84 (1987)).
>
> b.   There are questions of law or fact common to the class – whether the inquiries into mental health history, the consideration of any information stemming from these unnecessary inquires, as well as the placement of additional

burdens on individuals with disabilities in the course of the process of admission to the Indiana bar violates the Americans with Disabilities Act.

 c. The claims of the representative party are typical of those of the class.

 d. The representative party will fairly and adequately protect the interests of the class.

11. The further requirements of Rule 23(b)(2) of the Federal Rules of Civil Procedure are met in this cause in that the defendants, at all times, have acted and have refused to act in a manner generally applicable to the class, thereby making final injunctive and declaratory relief appropriate with respect to the class as a whole.

12. Counsel for plaintiff is an appropriate and adequate attorney to represent the class and should be appointed as attorney for the class pursuant to Rule 23(g), Federal Rules of Civil Procedure.

**Legal background**

13. The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq,* has as its purpose:

> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and
>
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C.A. § 12101 (b).

14. The ADA provides, at 42 U.S.C. § 12132, that:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

15. A public entity includes, "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B).

16. The ADA further specifies that:

> The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity

42 U.S.C. § 12131(2).

17. Under the ADA,

> The term "disability" means, with respect to an individual--
>
>> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>>
>> (B) a record of such an impairment; or
>>
>> (C) being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C. § 12102(1).

18. Recent amendments to the ADA define "regarding as having such an impairment" as used 42 U.S.C. § 12102(1)(C) as follows:

> For purposes of paragraph (1)(C):
>
> (A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

> (B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

42 U.S.C.A. § 12102 (3).

19. The ADA calls for a broad construction of its terms noting, among other things, "[t]he definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A).

20. Indiana law provides that the Indiana Supreme Court has "exclusive jurisdiction to . . . admit attorneys to practice law in all courts of the state." IND. CODE 33-24-1-2.

21. Pursuant to this authority, the Indiana Supreme Court has created the State Board of Law Examiners ("Board"), a ten-person board made up of members of the Indiana bar. Admission and Discipline Rule 9.

22. The Board is responsible for, among other things, creating the forms for application for admission to the Indiana bar, assessing the character and fitness of applicants for the bar, supervising the bi-annual bar examination, and certifying to the Supreme Court the applicants who have passed the examination and further recommending to the Court that the bar applicants are eligible for admission. Admission and Discipline Rules 11, 12, 17, 18.

23. Admission Rule 12, Section 2, discusses the fact that an applicant seeking bar admission must be of "good moral character and fitness to practice law." The Rule notes further that:

> [t]he applicant shall have the burden of proving that he or she possesses the requisite good moral character and fitness to practice law. The applicant has the absolute duty to inform the Board with full candor of any

facts which bear, even remotely, upon the question of the applicant's character and fitness and general qualifications to practice law, which obligation continues from the date of application to the time of admission, and includes the obligation to promptly and to fully inform the Board of any such facts occurring or discovered prior to admission. The term "good moral character" includes, but is not limited to, the qualities of honesty, fairness, candor, trustworthiness, observance of fiduciary responsibility, and of the laws of this State and of the United States, and a respect for the rights of other persons and things, and the judicial process. Anyone who has been convicted of a felony *prima facie* shall be deemed lacking the requisite of good moral character as defined in this section. The term "fitness" includes, but is not limited to, the physical and mental suitability of the applicant to practice law in Indiana. In satisfying the requirements of good moral character and fitness, applicants should be persons whose record of conduct justifies the trust of clients, adversaries, courts and others with respect to the professional duties owed to them, and whose record demonstrates the qualities of honesty, trustworthiness, diligence, or reliability. In the determination of good moral character and fitness, relevant considerations may include, but are not limited to the following: unlawful conduct; academic misconduct; making of false statements, including omissions; misconduct in employment; acts involving dishonesty, fraud, deceit or misrepresentation; abuse of legal process; neglect of financial responsibilities; violation of an order of a court; evidence of mental or emotional instability; evidence of drug or alcohol dependency; denial of admission to the bar in another jurisdiction on character and fitness grounds; and disciplinary action by a lawyer disciplinary agency or other professional disciplinary agency of any jurisdiction.

24. The Indiana Supreme Court has also created JLAP.

   The purpose of the Judges and Lawyers Assistance Program is assisting impaired members in recovery; educating the bench and bar; and reducing the potential harm caused by impairment to the individual, the public, the profession, and the legal system. Through the Judges and Lawyers Assistance Program, the Committee will provide assistance to judges, lawyer and law students who suffer from physical or mental disabilities that result from disease, chemical dependency, mental health problems or age that impair their ability to practice; and will support other programs designed to increase awareness about the problems of impairment among lawyers and judges.

Admission and Discipline Rule 31, Section 2.

25. The Board of Law Examines has authority to refer persons to JLAP "for

assessment or treatment." Admission and Discipline Rule 31, Section 8(c).

**Factual allegations**

26. Pursuant to authority granted by the Indiana Supreme Court the Members have prescribed the Application for Admission Upon Examination to Practice Law which must be completed in order for an applicant to sit for the Indiana bar.

27. A copy of the current application is attached to this complaint.

28. Questions 20-26 concern themselves with questions about drug and alcohol addiction as well as questions about the applicant's mental health.

29. These questions are introduced by a preamble that assures the applicant that the information provided is confidential.

30. The preamble further notes that "[t]he mere fact of treatment for mental health problems or addictions is not, in itself, a basis on which the applicant is ordinarily denied admission."

31. The preamble also states: "[t]he State Board of Law Examiners may deny certification to applicants whose ability to function is impaired in a manner relevant to the practice of law or to applicants who fail to carry their burden of proving that they are possessed of good moral character and fitness."

32. Question 22 on the bar application asks "[h]ave you been diagnosed with or have you been treated for bi-polar disorder, schizophrenia, paranoia, or any other psychotic disorder?"

33. Question 23 on the bar application asks "[f]rom the age of 16 years to the present, have you been diagnosed with or treated for any mental, emotional or nervous disorders?"

34. Question 24 on the bar application asks "[d]o you have any condition or impairment (including, but not limited to, substance abuse, alcohol abuse, or a mental, emotional, or nervous disorder or condition) which in any way currently affects, or if untreated could affect, your ability to practice law in a competent and professional manner?"

35. Question 25 of the bar application asks "If your Answer to Question 24 is Yes, are the limitations or impairments caused by your mental health condition or substance abuse problem reduced or ameliorated because you receive ongoing treatment (with or without medication) or because you participate in a monitoring program?"

36. If an affirmative answer is given to any of the above questions the bar applicant is instructed to complete form B1 which is a form where the applicant must include the dates of any treatment and the names and complete addresses of treatment providers along with a "[d]etailed description of the type of problem condition, impairment, diagnosis, treatment and/or monitoring program."

37. The applicant must make as many copies of Form B1 as "necessary to report each instance on a separate form."

38. The application notes that "[u]pon review of the information you provided in Form B1 the State Board of Law Examiners will make a determination whether further information or medical records are needed to further assess you good moral character and fitness to practice law in Indiana. If such information or medical records are needed, you will be notified."

39. The application form contains a release form authorizing any and all persons to release information to the Board of law Examiners as requested.

40. Question 26 of the application asks: "Have you ever raised the . . . issue of a mental, emotional, nervous or behavioral disorder or condition as a defense, mitigation, or an explanation for your actions in the course of any administrative or judicial proceeding or investigation, any inquiry or other proceeding, or any proposed termination by an educational institution, employer, government agency, professional organization or licensing authority?"

41. If an affirmative answer is given the applicant must "provide a thorough written factual explanation [on] Form B-1.. Include pertinent names, addresses, dates and references to records, as appropriate."

42. On information and belief, if an applicant answers in the affirmative to the questions contained in the application's paragraphs 23, 24, 25, or 26, the applicant may be referred to JLAP for further evaluation.

43. If the applicant answers in the affirmative to the questions contained in application paragraphs 23, 24, or 25 the applicant may be required to produce all medical records concerning past treatment, even if the applicant has no impairment that is relevant to the applicant's ability to become a member of the Indiana bar.

44. Applicant Doe is a graduate of an Indiana law school and is a member in good standing of the Illinois bar. She has never been subject to discipline as an attorney

45. Ms. Doe has been diagnosed in the past by mental health professionals as suffering from anxiety disorder and post traumatic stress disorder. She has been in mental health counseling and has consistently been able to function, both in law school and after law school, at a high level.

46. Ms. Doe applied for the Indiana bar in the fall of 2008. This application has been

withdrawn and she has no application pending at the current time.

47. Ms. Doe completed the application for the Indiana bar and truthfully answered in the affirmative to questions 23 and 26. The application has been revised since then. However, questions 22-26 remain virtually identical.

48. Upon answering these questions the Members determined that she had to contact JLAP for a thorough review of her mental health records and a further evaluation, if necessary.

49. Ms. Doe presented letters from mental health professionals who treated her who specified that she was able to function at a high level and was fit to practice law and of high moral character.

50. Nevertheless, the Members determined that no determination of character and fitness could be made until after JLAP had completed its evaluation.

51. Ms. Doe withdrew her application for the bar before any determination was made as to her character and fitness.

52. Ms. Doe, and the other members of the putative class, merely because they have been diagnosed with mental, emotional or nervous disorders in the past, and/or merely because they are currently receiving treatment for these disorders which ameliorate any negative effect, are required to be subjected to unnecessary and intrusive inquiries into their mental health histories, as well as having this mental health history considered as relevant to their current ability to practice law, and having additional burdens imposed upon them, such as referrals to JLAP and the requirement that they comply with JLAP's requirements.

53. Ms. Doe and the members of the putative class are subjected to unnecessary

inquiries and burdens merely because they have been diagnosed in the past with mental, emotional, or nervous disorders which have no bearing on their current fitness to practice law.

54. Ms. Doe and the members of the putative class have a disability as defined by ADA inasmuch as, at the very least, they have been subjected to discrimination prohibited by the ADA because of perceived mental impairments.

55. Ms. Doe, a member of the Illinois bar, is clearly a qualified individual with a disability in that she meets the essential requirements to be deemed to have the good character and fitness to sit for the Indiana bar examination.

56. Ms. Doe intends to apply to take the Indiana bar examination in February of 2010.

57. She will be required to complete the application for the Indiana bar.

58. Ms. Doe does not want to subject herself again to answering the bar application's intrusive questions, but she will have to do so to be able to sit for the bar examination.

59. Ms. Doe does not want to have to produce all of her medical records and respond to invasive review and questioning by JLAP, but she will have to do to be able to sit for the bar examination.

60. Ms. Doe does not want her past mental health history which, inasmuch as it does not affect her behavior, conduct or character, has no relevance to the character and fitness inquiry, to be considered by the members.

61. The Members together as the Board of Law Examiners constitute a public entity under the ADA. At all times defendants have acted under color of state law.

62. The actions of defendants are causing Ms. Doe and the putative class irreparable harm for which there is no adequate remedy at law.

**Legal claim**

63. To the extent that defendants are subjecting Ms. Doe and the putative class to different and elevated burdens solely because of their past histories of mental, emotional, or nervous disorders, the defendants are discriminating against qualified individuals with a disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12132.

**Request for relief**

WHEREFORE, plaintiff requests that this Court:

a. Accept jurisdiction of this cause.

b. Certify this case as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, with the class as defined above.

c. Enter a declaratory judgment that defendants have violated the Americans with Disabilities Act as specified above.

d. Enter a preliminary injunction, later to be made permanent, preventing defendants from asking plaintiff Doe and the putative class any questions or inquiries that do not concern behavior but which solely concern past or present mental health diagnoses or treatment and preventing defendants from discriminating against plaintiff Doe and the putative class because of their past or present mental health diagnoses.

e. Award plaintiff her costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12205.

f. Award all other proper relief.

_____
Kenneth J. Falk
No. 6777-49
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059 ext. 104
fax: 317/635-4105
kfalk@aclu-in.org

Attorney for Plaintiff and the Putative Class